IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHARLES J. SMALLWOOD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-24-121-RAW-SPS |
| | ) |
| **MICHELLE A. KING,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Charles J. Smallwood, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Magistrate Judge recommends the Commissioner's decision be REVERSED and REMANDED.

**I.      Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*.

§ 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**II.     Background and Procedural History**

Claimant was born on May 15, 1983, and was 28 years old on the alleged disability onset date. (Tr. 29). He was 38 years old at the time of the most recent administrative hearing. (Tr. 44). He has completed high school and has past relevant work experience as a gate guard, correction officer, lubrication technician, tire changer, doorkeeper, construction laborer, food deliverer, and a van driver. (Tr. 2127-2128). (Tr. 29). Claimant asserts he has been unable to work since September 1, 2010. (Tr. 15).

Claimant applied for DIB (disability insurance benefits) and SSI (supplemental security income) pursuant to Titles II and XVI of the Act in September 2011, alleging disability beginning September 1, 2010. (Tr. 44, 92, 285-97, 2143, 2528, 2538). There have been three prior ALJ decisions, one remanded by the Appeals Council in 2014 (Tr. 145-60, 166-69), and two remanded by Federal district courts in January 2017 and February 2021. (Tr. 1-4, 10-31, 1280-85, 1289-1317, 1378-81, 1384-87, 1390-91, 1552-57, 2141-85).

On remand from the district court's 2021 order, the Appeals Council instructed the ALJ to consolidate new claims for DIB and SSI filed during the pendency of the preceding litigation and issue a new decision. (Tr. 2254-55, 2419-20). After a new hearing in November 2021, at which Claimant, with the assistance of his attorney, and a vocational expert, appeared and testified (Tr. 2141-85), an ALJ issued another unfavorable decision on February 9, 2022 (Tr. 2087-2129). The agency's Appeals Council found no basis to assume jurisdiction (Tr. 2392-94), making the February 2022 ALJ decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. § 404.984(b)(2).

**III.     Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had. severe impairments including insulin-dependent diabetes mellitus type II; chondromalacia of the right patella (with effusion and grating) and septic arthritis of the right knee with synovitis, status post synovectomy times, with irrigation and debridement, and right knee removal of deep implant; left knee chondromalacia patella and osteoarthritis; lumbar spine and thoracic spine degenerative disc disease; bipolar disorder; panic disorder with agoraphobia; generalized anxiety disorder; social phobia; personality disorder; PTSD (20 CFR 404.1520(c) and 416.920(c)). (Tr. 2096). The ALJ also found Claimant suffered from some nonsevere impairments, including  obesity, hypertension, hyperlipidemia, sinus tachycardia, obstructive sleep apnea, tinnitus and hearing loss, hepatic steatosis, status post ruptured back cyst, asthma, bilateral shoulder strain/sprain, right elbow lateral epicondylitis, bilateral hip degenerative joint disease, status post left hand gunshot wound, mild right median nerve entrapment, probable healed fracture deformity of the right fifth metacarpal, mild diabetic peripheral neuropathy, mild right eye nonproliferative diabetic retinopathy, presbyopia, myopia, astigmatism, vitamin D deficiency, vitamin B12 deficiency, diverticulitis and internal hemorrhoids, and migraine headaches. (Tr. 2096-2097).

Next, he found that Claimant's impairments did not meet a listing. (Tr. 2097). At step four, he found that Claimant was unable to perform any past relevant work, but retained "the residual functional capacity ("RFC") to perform light work with the following qualifications:

> occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; and frequent reaching, handling, or fingering. He must avoid frequent exposure to unprotected heights and unprotected moving mechanical parts. He can perform simple, routine tasks with

> routine work breaks. He can relate to supervisors and coworkers on a superficial work basis and can tolerate incidental interaction with the general public. He can respond appropriately to changes in a routine work setting.

(Tr. 2107). At step five, the ALJ found that this RFC would allow Claimant to perform other work existing in significant numbers in the national economy. (Tr. 2128-2129). The ALJ thus concluded that Claimant was not disabled under the Act. (Tr. 2129).

## IV.    Review

The relevant evidence before the ALJ reflects that Claimant had a long history of right knee pain. (Tr. 476, 534). He underwent right knee surgery in the past and, in 2013, had arthroscopic surgery to remove previously implanted hardware. (Tr. 927). After surgery, he developed an infection and had to have it irrigated and drained. (Tr. 1004, 1145). Claimant continued to report right knee pain after his surgery. (Tr. 1717, 2717, 2799, 2783, 2979, 2830, 2832, 2843-44, 2880, 2884, 3230). Claimant also accidentally shot himself in the left hand in March 2020 while he was cleaning a gun. (Tr. 2723, 2725, 2857, 2865, 2874-75, 3270-76, 3280, 3284). Claimant later underwent treatment for right hand jerking and contracture. (Tr. 2771, 2774-75, 2857).

Claimant has also been hospitalized on several occasions due to his mental impairments of bipolar disorder, panic disorder with agoraphobia, anxiety disorder, social phobia, personality disorder, and PTSD. (Tr. 609-616, 1003-1081, 12-2-1251). He also had a history of anger and depression. (Tr. 461). Claimant started treatment with Carl Albert Community Mental Health Center (CACMHC) in June 2012. (Tr. 583). He was admitted to the Oklahoma Department of Mental Health in late 2012, for about a week, after his grandmother died. (Tr. 609). He experienced much improvement after he was released. (Tr. 617). He, however, continued to experience depression and anxiety. (*see, e.g.,* Tr. 629, 907, 910, 1761, 2699, 2702, 2912, 2914, 2916-19, 2920-23, 3315, 3317). In September 2013, CACMHC diagnosed Claimant with bipolar disorder and

assigned a GAF (Global Assessment of Functioning) score of 38 (Tr. 906).[2] Claimant was hospitalized in February 2014 for suicidal ideation and insulin overdose. (Tr. 1202-51).

In August 2017, Claimant underwent hospitalization after intentional overdose of Trazodone (an antidepressant). (Tr. 2901-11, 3122-75). In January 2018, Cindy Baugh, APRN, diagnosed Claimant with bipolar I and anxiety disorder and assessed a GAF score of 60. (Tr. 2922).[3] In January 2020, Leslie Jeffries, APRN, diagnosed bipolar disorder, mixed, and assessed a GAF score of 51. (Tr. 2918-19). Plaintiff was hospitalized in February 2014 for suicidal ideation and insulin overdose (Tr. 1202-51).

In December 2011, Cynthia Kampschaefer, Psy.D., a state agency psychologist, reviewed the evidence, and said Claimant did not have a severe mental impairment. (Tr. 505-18). In March 2012, Yamir Laboy, Psy.D., a state agency psychologist reviewed the evidence and agreed with the opinion of Dr. Kampschaefer. (Tr. 550-51). In November 2012, Paula Kresser, Ph.D., a state agency psychologist, reviewed the evidence and said Claimant had marked limitations on interacting appropriately with the public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic

---

[2] A GAF score of score of 31-40 indicates"[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant)OR major impairment in several areas such as work or school, family relations, judgement, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (Text Revision 4th ed. 2000). [2]A GAF score of 51-60 indicates that a person had "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

[3] A GAF score of 51-60 indicates that a person had "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

standards of neatness and cleanliness; and responding appropriately to changes in the work setting. (Tr. 591-606).

In August 2014, Theresa Farrow, M.D., said Claimant was "unable to work at that time." (Tr. 1279). In February 2018, John Hickman, Ph.D., completed medical interrogatories at the request of an ALJ, wherein he said Claimant had marked limitations on interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself, and, therefore, his impairments met the requirements of sections 12.04, 12.06, and 12.15 of 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the Listings) as of September 1, 2010. (Tr. 2007-11).

In March 2020, Joy Kelley, Ph.D., a state agency psychologist, reviewed the evidence, and said Claimant had, among other things, moderate limitations on his ability to carry out detailed instructions, but could ultimately perform simple and some complex tasks; relate to others on a superficial work basis; and adapt to a work situation. (Tr. 2261-84). Stephanie Crall, Ph.D., a state agency psychologist, reviewed the evidence and, like Dr. Kelley, said Claimant had, among other things, moderate limitations on his ability to carry out detailed instructions, but could ultimately perform simple and detailed (but not complex) tasks; relate to others on a superficial work basis; and adapt to a work situation. (Tr. 2285-2318).

Claimant contends, *inter alia*, that the ALJ failed to comply with SSR 96-8p, leaving the RFC unsupported by substantial evidence. SSR 96-8p requires the ALJ to explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. If the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p. Social Security Rulings are binding on an ALJ. 20 C.F.R.§402.35(b)(1); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). See *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (ALJ failed to explain why he apparently rejected certain limitations while adopting

others, requiring reversal); *Grotendorst v. Astrue,* 370 Fed.Appx. 879, 883-84 (10th Cir. 2010) (failure to explain why limitations were not included required reversal), *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996) (reversal where ALJ failed to include limitations of physician found credible by ALJ). See also *Karla M. v. Kijakazi*, Case No. 2:21-cv-02528-EFM, 2022 WL 4597849 *6-7 (D. Kan. Sept. 30, 2022) (unpublished) (reversing, finding the ALJ did not comply with SSR 96-8p where the ALJ failed to include limitation opined by physician whose opinions were found persuasive and supported by the evidence).

Dr. Kelly and Dr. Crall both opined Claimant was moderately limited in the ability to carry out detailed instructions. (Tr. 2269, 2298). The ALJ found the opinions of Dr. Kelly and Dr. Crall entitled to "partial" weight (Tr. 2126-2127) but failed to account for any limitations in the RFC as to Claimant's ability to carry out instructions. (Tr. 2107). The ALJ merely limited Claimant to simple routine tasks. (Tr. 2107). As noted by Claimant, tasks are not the same as instructions. Tasks are the assigned duties and functions of a job. *Task*, Merriam-Webster www.merriam-webster.com/dictionary/task (last visited July 31, 2024). Instructions are the orders or procedure given to complete a task. *Instruction*, Merriam-Webster www.merriam-webster.com/dictionary/instruction (last visited July 31, 2024). (Doc. 14, n. 5). The ALJ did not explain why, having found the opinions entitled to at least "partial" weight, he did not account for the limitation on the ability to carry out detailed instructions. (Tr. 2126-2127).

Further, had the ALJ accounted for limitations on the ability to carry out detailed instructions, two of the jobs identified by the VE at step five would have been eliminated. The job of merchandise marker (DOT #209.587-034) is a reasoning level 2 job requiring the ability to carry out detailed instructions. The job of mail clerk (DOT #209.687-026) is an even higher reasoning level 3 job, requiring the ability to carry out all written, oral, and diagrammatic instructions.

Accordingly, this matter should be reversed as the ALJ failed to include in the RFC the opinions he found to be entitled to partial weight and, further, failed to comply with SSR 96-8p and explain why he did not include the limitations opined by Dr. Kelly and Dr. Crall. Social Security Rulings are binding on an ALJ. 20 C.F.R.§402.35(b)(1); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). If on reconsideration the ALJ finds that any changes must be made to Claimant's RFC, he should then redetermine what work, if any, Claimant can perform and ultimately whether he is disabled.

### IV.    Conclusion

For the reasons set forth above, the undersigned Magistrate Judge RECOMMENDS that the decision of the Commissioner be REVERSED, and the case REMANDED for further proceedings consistent herewith. Objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

**IT IS SO ORDERED this 12th day of February, 2025.**

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**